IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LENEXA 95 PARTNERS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>KIN, INC.,<br><br>    Defendant. | Case No. 20-2367-JWB-ADM |

**MEMORANDUM AND ORDER**

Defendant Kin, Inc. ("Kohl's") formerly operated a Kohl's department store near 95th Street and I-35 in Lenexa, Kansas. Kohl's leased the premises from Plaintiff Lenexa 95 Partners, LLC ("Lenexa 95") and its predecessors in interest. After the lease expired, Lenexa 95 filed this lawsuit in which it alleges that Kohl's breached the lease agreement by failing to properly maintain and repair the premises and surrendering the premises in a deteriorated condition. Kohl's disputes this and contends that it kept the premises in the condition required by the lease and surrendered the premises with only ordinary wear and tear.

When the parties submitted their proposed pretrial order, Kohl's sought to assert two defenses: (1) a failure-to-mitigate defense based on Lenexa 95's alleged failure to take reasonable actions to prevent damage to the Leased Premises, and (2) a waiver and estoppel defense based on Lenexa 95's alleged failure to give Kohl's notice of default and an opportunity to cure defects in the property's condition. Lenexa 95 objected to these defenses on the grounds that Kohl's did not properly disclose them in discovery. In order to expedite briefing on this dispute given the late stage of the case, the court directed the parties to file cross-motions that would eliminate the need

for replies.  This matter is therefore now before the court on Lenexa 95's motion to strike Kohl's waiver and mitigation defenses (ECF 110), and Kohl's motion for leave to serve supplementary interrogatory responses (ECF 109).  For the reasons explained below, the court grants in part and denies in part Lenexa 95's motion to strike and denies Kohl's motion to supplement its interrogatory responses.  Specifically, the court will strike the mitigation defense but will allow the waiver defense, which was sufficiently disclosed.

## I.   KOHL'S MITIGATION DEFENSE

Kohl's answer asserted an affirmative defense that Lenexa 95's "claims are barred or must be reduced due to [Lenexa 95's] failure to mitigate and/or prevent damages, or by the absence of cognizable damages."  (ECF 5 ¶ 2.)  During discovery, Lenexa 95 propounded a contention Interrogatory No. 18, which required Kohl's to identify the facts supporting this failure-to-mitigate defense.  (ECF 110-1, at 15-16.)  Kohl's responded, in sum and substance, that Lenexa 95 had earlier opportunities to sell or lease the property to another user, or to redevelop the property for a different user.  (*Id.*)  Then, when the parties submitted their proposed pretrial order, Kohl's asserted a different factual theory in support of its failure-to-mitigate defense—namely, that Lenexa 95 failed to take reasonable actions to prevent damage to the leased premises.  Lenexa 95 therefore moved to strike this revised failure-to-mitigate theory from the pretrial order.  In response, Kohl's contends that it was not required to supplement its interrogatory response or, alternatively, Kohl's seeks leave to supplement the response via a motion the court required Kohl's to file so that the court could better understand the contours of this proposed defense.

### A.   Kohl's did not comply with Rule 26(e)(1)(A).

A party must supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"  FED. R. CIV.

P. 26(e)(1).  Comparing Kohl's response to Interrogatory No. 18 to its proposed contentions in the pretrial order shows that Kohl's interrogatory response is incomplete or incorrect.  Interrogatory No. 18 asked Kohl's to identify the facts supporting its mitigation defense.  (ECF 110-1, at 15.) Kohl's response pointed to Lenexa 95's opportunities to lease, sell, or redevelop the property for other users who would not need the repairs, replacements, and maintenance at issue.  (*Id.* at 15-16.)  Kohl's asserted a different factual theory in the draft pretrial order—that is, that Lenexa 95 failed to take reasonable actions to prevent damage to the premises.

Kohl's does not dispute that its response to Interrogatory No. 18 was incomplete or incorrect, but instead takes the position that it was not required to supplement.  Kohl's relies on the rule that a party need not supplement a discovery response "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"  FED. R. CIV. P. 26(e)(1).  Kohl's says that Lenexa 95 "was aware of [Kohl's] failure to mitigate damages defense, and was further aware of [Lenexa 95's] failure to take steps to prevent further damage to the premises after the lease term ended."  (ECF 113, at 2.)  According to Kohl's, the source of this information was the deposition testimony of Lenexa 95's own corporate representative, David J. Christie.

Kohl's argument misconstrues the information sought by Interrogatory No. 18.  It is a contention interrogatory that required Kohl's to identify the facts supporting its failure-to-mitigate defense.  Contention interrogatories serve the important purpose of "helping to discover facts supporting the theories of the parties" and "narrowing and sharpening the issues thereby confining discovery and simplifying trial preparation."  *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012) (citing Fed. R. Civ. P. 33 advisory committee's note to the 1970 amendment).  It would be uncommon for the "otherwise made known" exception in Rule 26(e) to

3

apply to a contention interrogatory because discovering relevant information is not the same as discovering that the opposing party intends to rely on that information in support of its claims or defenses—which is what a contention interrogatory aims to flesh out. *See U.S. ex rel. Nat'l Res. Def. Council v. Lockheed Martin Corp.*, No. 5:99-CV-170, 2014 WL 6909652, at *6 (W.D. Ky. Dec. 8, 2014) ("Knowing of the statement and its factual context, however, is different from knowing that one's opponent alleges the statement was false."). Generally, information is "otherwise made known" if it is "in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1168–69 (D. Colo. 2015). "[P]ointing to places in the discovery where the information was mentioned in passing is not sufficient." *Id.*; *see also In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 17 (1st Cir. 2019) (describing the inquiry as hinging on the relevance of the information in the would-be supplemental response).

Here, Christie's deposition testimony is not the functional equivalent of a supplemental interrogatory response. Kohl's counsel asked Christie a variety of questions about whether Lenexa 95 had performed maintenance on certain parts of the property after Kohl's lease expired in January of 2020. Christie testified that Lenexa 95 did not undertake any substantial work to shore up the roof, parking lot, or HVAC units after Kohl's lease term ended other than preventative maintenance to make sure the roof is watertight and the heating components of the HVAC system work, and blocking off the parking lot to keep traffic off of it. (ECF 109-4; 113-4.) Kohl's did not correlate these passing references to repairs and maintenance to its failure-to-mitigate theory. Kohl's reasoning would effectively render contention interrogatories meaningless. Indeed, Kohl's original response to Interrogatory No. 18 served only to mislead Lenexa 95 into believing that the response was complete. Kohl's stated that its failure-to-mitigate theory was based on Lenexa 95's

4

opportunities to sell, lease, or redevelop the property for another user, and Kohl's stated that it would "supplement as further facts are developed during discovery." (ECF 110-1, at 16.) But then Kohl's never supplemented. And Kohl's corporate representative testified that he had reviewed Kohl's interrogatory responses and did not see any changes or amendments that Kohl's needed to make. (ECF 110-7, at 308:2-12.) As such, Kohl's failed to supplement its response to Interrogatory No. 18 as required by Rule 26(e).

### C. Kohl's request to serve a supplemental response to Interrogatory No. 18 is denied as untimely.

As a fallback to Kohl's argument that its response to Interrogatory No. 18 was sufficient, it seeks leave to supplement the response. Its proposed supplemental response would add the following facts to support its failure-to-mitigate defense:

> [Lenexa 95] failed to take reasonable steps to maintain the property and/or repair property conditions so as to prevent damage or deterioration, or to prevent further damage or deterioration, to the property, including with regard to HVAC, the roof, the concrete and asphalt, and aspects of the interior of the building such as alleged leaks. [Lenexa 95] has likewise failed to produce documentation to substantiate any claims that [it] maintained or repaired [those aspects of the premises].

(ECF 109-1, at 2.) Kohl's contends that this supplemental interrogatory response is timely because it first discovered that Lenexa 95 had undertaken little or no efforts to repair or maintain the premises so as to prevent damage at Christie's deposition on April 8.

A party must supplement a discovery response that is incomplete or incorrect "in a timely manner." FED. R. CIV. P. 26(e)(1)(A). Whether a supplement is timely depends on the facts and circumstances of each case. *See Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 196 F. Supp. 3d 783, 795 (E.D. Tenn. 2016), *aff'd,* 899 F.3d 428 (6th Cir. 2018). Supplementations after the close of discovery do not satisfy Rule 26(e) when the party was able to serve the supplemental response sooner. *See generally id.* (disclosure of witness declaration 28 days after obtaining it was

timely because it was disclosed within 30 days and before the close of discovery). While there is no bright-line rule that a party may not supplement discovery responses after the close of discovery, the timing must be reasonable based on when the information was available to the party serving the supplemental response. *See Silvagni v. Wal-mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017); *Wing Enterprises, Inc. v. Tricam Indus., Inc.*, No. 17-CV-1769 (ECT/ECW), 2018 WL 6326416, at *12 (D. Minn. Dec. 4, 2018) (timeliness measured from "'the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them'"). Although parties may not be able to fully answer some contention interrogatories until after considerable discovery, they must still answer "as fully as they can, keeping in mind their continuing obligation to supplement their discovery responses as additional or different information becomes available." *Pouncil v. Branch L. Firm*, 277 F.R.D. 642, 650 (D. Kan. 2011); *see also Woods*, 692 F.3d at 1280 ("Rule 26(e) requires that as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, be corrected or supplemented to reflect those changes.").

To try to justify the belated supplementation, Kohl's blames Lenexa 95's response to Kohl's Interrogatory No. 5, which asked Lenexa 95 what steps it had taken to mitigate its damages. (ECF 109-3, at 5.) Lenexa 95 responded to this interrogatory on January 26, stating that it obtained assessment reports outlining items that needed to be repaired; asked Kohl's to fix those items; when Kohl's refused, Lenexa 95 got bids for the repairs; and Lenexa 95 has no obligation to repair items the lease required Kohl's to repair. (*Id.*) In other words, this interrogatory response disclosed that Lenexa 95 did not mitigate its damages by performing its own repairs because Kohl's (not Lenexa 95) was obliged to fix the defects Kohl's left behind. This is materially indistinguishable from Christie's Rule 30(b)(6) deposition testimony. (*See, e.g.*, ECF 109-4, at 6

6

("there hasn't been any real effort to shore up the roof or shore up the parking lot or shore up the HVAC units, because Kohl's is responsible for replacing them"; "I haven't done any substantial work to restore the property because it is Kohl's obligation"). All of this is consistent with Kohl's new mitigation theory, which explicitly rests on Lenexa 95's alleged failure to repair or maintain the premises after Kohl's left.

In addition, Lenexa 95 points out that Kohl's expert witnesses inspected the property on September 8 and December 20, 2020. If Kohl's theory is that Lenexa 95 let the property further deteriorate after the lease ended, this should have been apparent on inspection.

In sum, Kohl's proposed supplemental response to Interrogatory No. 18, after the close of discovery, is untimely under Rule 26(e). Kohl's could have and should have served a supplemental response to Interrogatory No. 18 months ago, explaining its revised failure-to-mitigate defense that Lenexa had failed to take reasonable actions to repair and maintain the property so as to prevent further deterioration to the property's condition. It did not need to wait until after Christie's deposition on April 8.

### C. The court strikes the factual basis for Kohl's mitigation defense pursuant to Rule 37(c)(1).

As a sanction for failing to disclose information required by Rule 26(e), the party is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). This includes striking liability theories that were not disclosed in response to contention interrogatories. *See, e.g., Sofia v. Esposito*, No. 17 CIV. 1829 (KPF), 2019 WL 6529432, at *8 (S.D.N.Y. Dec. 4, 2019) (striking theory not disclosed in response to a contention interrogatory); *Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 017CV01048JRTKMM, 2018 WL 2047578, at *3 (D. Minn. May 2, 2018) (finding untimely supplemental contention interrogatory responses were not

7

substantially justified or harmless, but declining to exclude evidence in support of the belatedly disclosed theory because the court could remedy prejudice by allowing additional discovery); *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 557 (D.S.C. 2018) (applying Rule 37(c)(1) in response to an interrogatory asking for the identification of potential non-infringing substitutes); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 117 F. Supp. 3d 276, 294 (S.D.N.Y. 2015) ("[f]ailure to amend a contention interrogatory pursuant to Federal Rule of Civil Procedure 26(e) can bar use of a theory of liability, especially when such failure results in prejudice to the adverse party"). Although the rule, by its plain terms, only applies to information or witnesses used in conjunction with "a motion, at a hearing, or at trial," courts have also applied this rule when allowing or omitting information in a pretrial order would have the effect of allowing or disallowing previously undisclosed information. *See, e.g., Prideaux v. Tyson Foods, Inc.*, 387 F. App'x 474, 479 (5th Cir. 2010) (affirming district court's denial of a motion to amend the pretrial order pursuant to Rule 37(c)(1) to include a previously undisclosed witness pursuant to Rule 37(c)(1)); *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-CV-02516-WJM-KLM, 2014 WL 2933189, at *3 (D. Colo. June 30, 2014) (striking witnesses listed in a pretrial order).

The court has discretion to determine when a Rule 26(e) violation is substantially justified or harmless. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017). In making this determination, the court considers: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *HCG Platinum*, 873 F.3d at 1200. The party facing sanctions under Rule 37(c)(1) bears the burden to show substantial justification or harmlessness. *See Eldridge v.*

*Gordon Bros. Grp., L.L.C.*, 863 F.3d 66, 85 (1st Cir. 2017); *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1115 (D. Kan. 2018) (same), *aff'd sub nom. Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020).

Kohl's belated disclosure of its reasonable-actions-to-prevent-damage-to-the-premises theory in support of its failure-to-mitigate defense is not substantially justified or harmless. Lenexa 95 would be prejudiced by allowing Kohl's to belatedly advance this new theory. New claims, defenses, or theories appearing for the first time in the pretrial order "deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice." *See Burke v. Regalado*, 935 F.3d 960, 1005 (10th Cir. 2019) (objections to pretrial orders center on whether the objecting party received adequate notice of the new information). Lenexa 95 explains that, if Kohl's had timely disclosed this theory, Lenexa 95's experts would have supplemented their opinions. For example, Kohl's questioned one of Lenexa 95's experts about whether the lack of maintenance could have caused deterioration or damage to certain areas. (ECF 114-6, at 93:20-94:1.) The expert responded by stating that he doubted it would but did not know for a fact. (*Id.*) Lenexa 95 states that, if it had known that its own maintenance of the property was at issue, it would have provided expert opinions on this issue and made sure that its expert was prepared to testify about the matter.

This prejudice is exacerbated by the vagueness of this defense. Kohl's proposed contention in the pretrial order generically states that Lenexa 95 "[failed] to take reasonable actions to prevent damage to the Leased Premises." Its proposed supplemental response to Interrogatory No. 18 would add only that Lenexa 95 did not repair or maintain the HVAC, the roof, the concrete and asphalt, and the interior of the building to prevent further damage or deterioration. But this merely reiterates the main aspects of the premises that Lenexa 95 contends Kohl's failed to properly maintain and repair during the lease term. After expert inspections, reports, and months of

9

discovery, Kohl's apparently cannot even articulate what specific steps it contends that Lenexa 95 failed to take to prevent further deterioration, or how that failure exacerbated Lenexa 95's alleged damages.  As Lenexa 95 explains, if it had known that Kohl's was asserting this as a mitigation theory, Lenexa 95 would have asked Kohl's corporate designee additional questions to attempt to drill down on this defense—for example, clarifying what specific actions Kohl's contends Lenexa 95 should have taken to prevent damage, ascertaining whether those conditions existed before or after the lease ended, and evaluating whether Lenexa 95 would have spoliated evidence if it had performed those maintenance items after the lease ended.  Lenexa 95 did not have a full and fair opportunity to develop a discovery record on this new factual basis for Kohl's mitigation defense.

The prejudice to Lenexa 95 cannot be cured because discovery is now closed.  The parties had ample time and opportunity to conduct discovery.  The parties already had a lengthy discovery period, including an approximately three-month extension of the discovery deadline.  (ECF 37.)  The deadline for dispositive and expert-related motions is next week.  The court will not reopen discovery and delay this case to accommodate Kohl's delayed assertion of a defense that it could have asserted months ago.  Therefore, the court strikes the factual basis for this defense from the pretrial order because Kohl's did not timely supplement its response to Interrogatory No. 18 as required by Rule 26(e), and this failure was not substantially justified or harmless.

### III. KOHL'S WAIVER AND ESTOPPEL DEFENSE

Kohl's answer asserted an affirmative defense that Lenexa 95's claims "are barred by latches [sic], waiver and/or estoppel."  (ECF 5 ¶ 3.)  During discovery, Lenexa 95 propounded a contention Interrogatory No. 19 that required Kohl's to identify the facts supporting this defense.  (ECF 110-1, at 16-18.)  Kohl's responded, in sum and substance, that when Lenexa 95 purchased the property it obtained inspection reports that showed the property was well-maintained and in

good condition; that Lenexa 95 moved forward with purchasing the property with the intent to redevelop it for different users; that Lenexa 95 and its principals "are sophisticated real estate professionals" who manage similar properties and understand how to perform due diligence; and that they "**never put [Kohl's] in default** or ever raised any issue regarding the condition of the building" until Kohl's decided not to renew its lease. (*Id.* (emphasis added).)  Then, when the parties submitted their proposed pretrial order, Kohl's asserted that Lenexa 95 "waived the right to claim defaults concerning the condition of the Leased Premises and/or should be estopped from making such a claim, because [Lenexa 95] was aware of conditions of the property that [it] felt constituted a default or an event of default, but [Lenexa 95] failed to disclose or give notice and an **opportunity to cure** to Kohl's." (Emphasis added.)  This is largely the same theory with the addition of the right-to-cure language.

The parties' dispute concerning this defense essentially boils down to whether Kohl's statement in response to Interrogatory No. 19 that Lenexa 95 "never put [Kohl's] in default" was sufficient to preserve the corresponding opportunity-to-cure theory.  It was.  Under the lease agreement, the concepts of default and opportunity to cure are intertwined.  The lease defines an "Event of Default" in several different ways, some of which require the Landlord to give the Tenant notice of a failure (e.g., failure to pay rent) and the corresponding "Event of Default" occurs only if the Tenant does not cure the identified failure within a certain period of time thereafter. (ECF 114-10 § 22.1, at 39-40.)  For example, an "Event of Default" occurs if Tenant fails to perform or comply with any terms of the Lease (as is alleged here) "and such failure shall continue for more than thirty (30) days after the date of notice to Tenant of such failure." (*Id.*)  Once an Event of Default occurs, the Landlord may terminate the lease and re-enter, repossess, and relet the Leased Premises. (*Id.* §§ 22.2-22.4, at 41-42.)  Therefore, Kohl's statement that Lenexa 95

11

never put Kohl's in default gave Lenexa 95 adequate notice that this theory triggered the related lease provisions, including an opportunity to cure. What appears in the proposed pretrial order is essentially the same legal theory articulated in the response to the interrogatory, and so the interrogatory response was not incomplete in any material respect.

Lenexa 95's argument that the right-to-cure language represents a significant change is not based on a reasonable interpretation of Kohl's interrogatory response. Specifically, Lenexa 95 contends that the interrogatory response implies that Lenexa 95 provided a default notice and opportunity to cure and so Kohl's new theory represents a wholesale change. Lenexa 95 focuses on the sentence that states Lenexa 95 never put Kohl's in default or raised issues regarding the building until after Kohl's gave notice that it was not renewing the lease. Lenexa 95 contends that this sentence implies that Lenexa 95 did provide notice of a default and an opportunity to cure. But, read as a whole, the interrogatory response does not state or reasonably imply that Kohl's contends that Lenexa 95 *did* provide an opportunity to cure. Reading the response in its entirety, Kohl's contends that Lenexa 95 manufactured these grievances because Kohl's declined to renew its lease and Lenexa 95 wanted to "extract funds from [Kohl's] to assist in [Lenexa 95's] efforts to redevelop the property." (ECF 110-1, at 16.) The sentence regarding the parties' dispute about repairs goes to the theory that Lenexa 95's grievances are not genuine, not that Lenexa 95 somehow complied with the lease by providing a notice of default and an opportunity to cure.

Even if the court were to find that Kohl's failed to adequately disclose its opportunity-to-cure theory in response to Interrogatory No. 19, the failure is substantially justified and harmless such that exclusion under Rule 37(c)(1) would not be warranted. Allowing the right-to-cure language to remain as part of Kohl's waiver and estoppel defense will not prejudice or surprise Lenexa 95 for all of the reasons discussed above—namely, Kohl's defense that Lenexa 95 never

gave Kohl's notice of default triggers consideration of the related lease provisions, including the opportunity to cure.  Furthermore, Lenexa 95 points out that this defense is barred by the lease's non-waiver provision.  (ECF 114-10 § 23.1, at 43-44.)  As such, Lenexa 95 will suffer no prejudice from this theory because it can litigate the non-waiver provision on the merits based solely on the plain language of the lease agreement without the need for further discovery.  For these reasons, Lenexa 95's motion is also denied under the Rule 37(c)(1) standard.

## IV. CONCLUSION

For the reasons explained above, Lenexa 95's motion to strike is granted in part and denied in part, and Kohl's motion to serve supplemental interrogatory responses is denied.  The court will strike Kohl's mitigation defense from the pretrial order because it is predicated on a new factual theory that Kohl's did not disclose in response to Interrogatory No. 18.  But the court will allow Kohl's waiver and estoppel defense insofar as it is predicated on an opportunity to cure because Kohl's response to Interrogatory No. 19 gave Lenexa 95 adequate notice of this theory.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike Kin, Inc.'s Mitigation and Waiver Defenses Pursuant to Fed. R. Civ. P. 37(c)(1) (ECF 110) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Kin, Inc's Motion for Leave to Serve Supplemental Interrogatory Responses (ECF 109) is denied.

**IT IS SO ORDERED.**

Dated June 17, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
