IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENEXA 95 PARTNERS, LLC,

        Plaintiff,

v.                                                           Case No. 20-2367-JWB

KIN, INC. f/k/a KOHL'S INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motions for partial summary judgment (Doc. 117), motion to strike argument (Doc. 130), motion to file excess pages (Doc. 142), and Defendant's motion for summary judgment (Doc. 120.) The motions are briefed and ripe for decision. (Docs. 118, 120, 130, 131, 139, 140, 141, 142, 143, 144, 145.) For the reasons stated herein, Plaintiff's motion for partial summary judgment (Doc. 117) is GRANTED IN PART and DENIED IN PART. The remaining motions (Docs. 120; 130; 142) are DENIED.

**I.     Background**

Based on the materials submitted, the court finds the following facts to be uncontroverted for purposes of summary judgment. This statement does not include facts asserted by either party that are not properly supported by the materials cited or that are not shown to be based on personal knowledge of the witness.

Bond XII Delaware Business Trust (landlord) and Home Quarters Warehouse, Inc. (tenant) were the original parties to the underlying Lease Agreement dated August 12, 1994 (the "Lease"). The Lease concerns certain commercial real property in Lenexa, Kansas (the "Premises"). The

Lease term was from August 12, 1994, through January 31, 2020, with options for the tenant to renew the Lease for nine additional periods of five years each

On January 27, 2006, Kohl's Illinois, Inc. ("Defendant") was assigned the Lease's tenancy. Thereafter, Defendant performed and paid for over $3 million in capital improvements to the Premises. These improvements included replacing portions of the concrete parking lots, installing new sidewalks, and installing a new roofing membrane. (Doc. 118 at 2-3.)

On September 8, 2014, Defendant sent a letter (the "Update of Notices") to the then-current landlord that "[n]otices which are to be delivered to the tenant under the Lease should be sent to the following" addresses:

> Kohl's Illinois, Inc.
> c/o Kohl's Department Stores, Inc.
> N56 W17000 Ridgewood Drive
> Menomonee Falls, WI 53005
> Attention: Chairman
>
> Kohl's Department Stores, Inc.
> N56 W17000 Ridgewood Drive
> Menomonee Falls, Wisconsin 53051
> Attention: Law Department

(Doc. 120-1 at 5.)[1]

On February 21, 2018, Lenexa 95 Partners, LLC ("Plaintiff") purchased the Premises and became the landlord and ultimate successor-in-interest to the Lease. At that time, Defendant was already operating a retail department store on the Premises. On January 15, 2019, Defendant

---

[1] Plaintiff objects to this on the basis that Defendant "failed to make this alleged fact known in discovery." (Doc. 131 at 4.) Plaintiff also boldly asserts in its Motion to Strike the Update of Notices that Defendant's motion for summary judgment "was the very first time throughout this case that Kohl's made any mention of the Update of Notices." (Doc. 130 at 2.) This statement by Plaintiff is demonstrably false. In the Pretrial Order, Plaintiff expressly stipulated to the admissibility of the Update of Notices as an exhibit for summary judgment and trial. (Doc. 116 at 5.) Plaintiff will not now be heard to wail about an exhibit to which it stipulated in the Pretrial Order, and its Motion to Strike is accordingly denied.

2

notified Plaintiff that it did not intend to renew the lease and, at midnight on January 31, 2020, would "surrender the Premises to Landlord pursuant to the terms of the Lease." (Doc. 116 at 4.)

On November 21, 2019, Plaintiff sent a letter (the "First Letter") addressed to "Mr. Scott Schnuckel[,] Real Estate Director[,] Kohl's Department Stores, Inc.[,] W 165 N 5830 Ridgewood Drive[,] Menomonee Falls, WI 53051[.]" (Doc. 120 at 6-7.) The letter stated:

> Dear Scott,
>
> Please find a detailed report concerning the condition of the premises located on the above referenced address. It outlines Immediate Repairs that need to be undertaken and long term costs that would not be under the purvey of Kohl's. Please review the report in detail and let's visit about how Kohl's wants to handle the property deficiencies. If we can be of assistance please don't hesitate to call.

(*Id*.)

On March 6, 2020, Plaintiff sent another letter (the "Second Letter") addressed to Mr. Scott Schnuckel with the subject line reading "Replacement of Deficient Concrete Kohl's Store #1065 12381 W. 95th Street, Lenexa, KS[.]" (Doc. 120-9 at 2.) Plaintiff stated that it "endeavors to receive the building back with the same specifications and conditions that was provided to [Defendant] at the lease execution." (*Id*.) The Second Letter contained multiple bids for concrete replacement, roofing repair/replacement, and asphalt work.

On April 22, 2020, Plaintiff's law firm sent a letter (the "Third Letter") to both Mr. Scott Schnuckel and Defendant's corporate headquarters. The Third Letter alleged that: the roof was leaking in five locations and needed to be replaced; the carpet was destroyed by water damage; the sprinkler line had been repaired; and that concrete replacement was required. Following this, Plaintiff stated that Defendant "is in default of the Lease by failing to repair and maintain the Property and by failing to surrender the Property in the same condition it was received. . . [and Plaintiff] hereby demands payment of $1,419,170.01 by May 1, 2020." (Doc. 120-10 at 4.)

Following back and forth communications with Defendant, Plaintiff filed suit in state court alleging breach of contract arising from Defendant's failure to maintain and surrender the Premises in accordance with the standards prescribed in the Lease. On July 29, 2020, Defendant removed the case from the District Court of Johnson County, Kansas to this court. (Doc. 1.)

**II.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The court views

all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

**III.  Analysis**

Plaintiff moves for partial summary judgment as to Defendant's liability and defenses.  For liability purposes, Plaintiff argues that Defendant "allowed the Leased Premises' parking lots, roofs, HVAC units, and carpeting to deteriorate to disrepair, poor operating order, poor condition, and unsightly appearance."  (Doc. 118 at 14.)  Further, Plaintiff asserts summary judgment is proper against Defendant's affirmative defenses because they "lack evidentiary support and fail." (*Id*.)  Defendant moves for summary judgment arguing that "Plaintiff cannot establish breach and its compliance with the Lease regarding notice and opportunity to cure, and thus Plaintiff cannot prevail on its sole cause of action for breach of contract."  (Doc. 120 at 2.)

At the center of the parties' cross-motions for summary judgment lies a dispute over how a lease with maintenance, repair, and replacement provisions should be construed against a surrender provision that excepts ordinary wear and tear.  The Lease contained a choice-of-law provision specifying Kansas Law, and the parties do not dispute that Kansas law applies.

Under Kansas law, "[t]he primary rule for interpreting written contracts is to ascertain the parties' intent.  If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction."  *Carrothers Const. Co. v. City of S. Hutchinson*, 288 Kan. 743, 751, 207 P.3d 231, 239 (2009) (citing *Anderson v. Dillard's, Inc*., 283 Kan. 432, 436, 153 P.3d 550 (2007)).  "Ambiguity in a contract does not appear until two or more meanings can be construed from the contract provisions."  *Id.* (citing *Gore v. Beren*, 254 Kan. 418, 426–27, 867 P.2d 330 (1994)).  In interpreting the contract, the court should not isolate any particular provision but construe the entire contract together.  *Wichita Clinic, P.A. v. Louis*, 39

Kan. App. 2d 848, 853, 185 P.3d 946, 951 (2008). "The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided." *Id.* (citing *Johnson County Bank v. Ross*, 28 Kan.App.2d 8, 10–11, 13 P.3d 351 (2000)).

### A. Defendant's Motion for Summary Judgment – Notice and Cure

The Court begins with Defendant's motion for summary judgment since it could be dispositive of the case, rendering Plaintiff's cross-motion moot. Defendant asserts that the Lease required Plaintiff to provide notice of default and an opportunity for Defendant to cure the default prior to filing suit. (Doc. 120 at 8.) Defendant asserts that Plaintiff's failure to comply with the Lease's notice-and-cure provisions is an absolute bar to suit. (*Id.*)

Article 22 of the Lease addresses defaults and the consequences thereof. Section 22.1 defines an "Event of Default," in relevant part, as occurring

> if Tenant, at any time during the continuance of this Lease . . . shall . . . otherwise fail to perform or comply with any other term of this Lease . . . and such failure shall continue for more than thirty (30) days after the date of notice to Tenant of such failure (provided that if any such default cannot with due diligence be cured within such thirty (30) day period and if the cure of such default shall be promptly commenced (but in any event, within such thirty (30) day period) and prosecuted with diligence, the period within which such default may be cured shall be extended for such an additional period of time (not to exceed 120 days) as may be reasonable necessary to cure such default with diligence and continuity) . . . .

(Lease § 22.1(i).) The consequences of a default are addressed in subsequent sections of Article 22. For example, Section 22.2 grants the landlord a right to terminate the Lease for an uncured default. Similarly, Section 22.3 grants the landlord a right of re-entry, and Section 22.4 gives the landlord the right to relet the Premises, all following an uncured default. The balance of Article 22 contains additional provisions related to default which generally preserve the landlord's rights and the tenant's obligations during default and address other ancillary matters.

6

Noticeably absent from Article 22 (as well as the rest of the Lease) is any provision requiring Plaintiff to give notice of default and an opportunity to cure before filing suit for damages. Instead, Article 22 merely requires notice and an opportunity to cure before Plaintiff avails itself of the additional remedies addressed therein. Thus, Plaintiff would be obliged to follow the notice-and-cure provisions if it wanted to terminate the lease or re-enter the Premises; but the plain language of the Lease imposes no such requirement prior to filing suit, and Defendant has directed the court to no other authority for the proposition that such notice was mandatory in spite of the fact that the Lease did not require it. Accordingly, Defendant's motion for summary judgment is denied.

### B. Plaintiff's Motion for Partial Summary Judgment on Liability

In its motion for partial summary judgment, Plaintiff asks the court to find that Plaintiff is entitled to judgment as a matter of law as to liability on its claim for breach of contract. (Doc. 118 at 19.) To establish a breach of contract under Kansas law, Plaintiff must show: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the [Plaintiff's] performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to [Plaintiff] caused by the breach." *Lawson v. Spirit AeroSystems, Inc.*, No. 18-CV-01100-EFM-KGS, 2018 WL 3973150, at *5 (D. Kan. Aug. 20, 2018) (citing *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013)). Only the last two elements appear to be contested in this case.

Among its other arguments, Plaintiff asserts the Lease holds Defendant "responsible for every property-related expense," because the parties intended the Lease to be a bond lease. (Doc. 118 at 16.) Plaintiff argues that, under a bond lease, a lessee is liable for all "costs, expenses and

7

obligations of every kind and nature whatsoever relating to the" Premises. (*Id*.) Section 7.1 of the Lease is titled "Net Lease; Nonterminability" and provides:

> The Basic Rent payable by the Tenant hereunder shall be absolutely net to the Landlord and such Basic Rent, Additional Rent and all other sums payable hereunder by Tenant, shall be absolute and unconditional, and shall be paid without set-off, counterclaim, abatement, suspension, deduction, defense, deferment, diminution or reduction, free from charges and expenses of any kind.  All costs, expenses and obligations of every kind and nature whatsoever relating to the Leased Premises and the appurtenances thereto and the use and occupancy thereof which may arise or become due and payable with respect to the period constituting the Term hereof (whether or not the same shall become payable during such Term or thereafter) shall be paid by Tenant as Additional Rent, subject to paragraph 19.3 hereof.

(Doc. 116 at 2-3.)   Plaintiff contends this illustrates the overall intent of the parties to hold Defendant responsible for any and every property-related expense.

The problem with this theory is that courts interpret contracts according to what they say, not based on whether the disputed contract sufficiently resembles some generalized form or type of agreement such that a court would impute to the contract some additional terms or meanings not expressed therein; nor do we interpret contracts based on some presumed subjective intent of one or more of the original contracting parties.  Here, section 7.1 contains two sentences.  The first sentence simply states that rent due under the Lease will not be diminished for pretty much any reason; but this case is not about a failure to pay rent.  The second sentence requires the tenant to pay "[a]ll costs, expenses and obligations of every kind" under the Lease as "Additional Rent," but that begs the question of which, if any, costs, expenses or obligations Defendant failed to pay, which is the real gist of this case.

As it pertains to the issues in this case, section 7.1 is at most a general provision regarding Defendant's financial obligations under the Lease.  Under Kansas law, "where there is an uncertainty between general provisions and specific provisions, the specific provisions ordinarily

qualify the meaning of the general provisions." *Smith v. Russ*, 184 Kan. 773, 339 P.2d 286, 291 (1959) (citation omitted).  "It is a reasonable inference that specific provisions express more exactly what parties intend than broad or general clauses which do not necessarily indicate that the parties had the particular matter in thought." *Id*.  In this case, Defendant's obligations regarding repair and maintenance of the Premises are governed by other, more specific provisions of the Lease.  Accordingly, neither section 7.1 nor Plaintiff's characterization of the Lease as a bond lease is relevant to the question of liability, and the court turns to the more specific Lease provisions regarding the tenant's repair and maintenance obligations.

Plaintiff relies heavily on sections 12.1 and 12.1.1 of the Lease, which address the tenant's maintenance and repair obligations during the term of the Lease.  Section 12.1 of the Lease provides:

> Tenant acknowledges that it has received the Leased Premises in good order and condition.  Subject to Tenant's rights set forth in paragraph 15, Tenant agrees that it will, at its sole expense, keep and maintain the Leased Premises, including any altered, rebuilt, additional or substituted buildings, structures and other improvements thereto, in good repair, operating order, condition and appearance, subject to Tenant's right to make Alterations as described in paragraph 13 hereof.

(Doc. 116 at 3.)

Section 12.1.1 of the Lease provides:

> Without limitation, Tenant agrees to make all repairs, restorations, renewals and replacements to the Leased Premises, including, without limitation, the heating, ventilation, air conditioning, mechanical, electrical and plumbing systems, roof, walls and foundation and the fixtures and appurtenances to the Leased Premises, if any, as and when needed to preserve them in good working order and condition, and regardless of whether the repairs, restorations, renewals and replacements are structural or nonstructural, ordinary or extraordinary, foreseeable or unforeseeable, capital or non-capital, or the fault or not the fault of Tenant, its agents, employees, invitees, visitors and contractors.

(Doc. 116 at 3.)

Plaintiff argues that under these provisions Defendant "is responsible for every property-related expense" because nothing in the maintenance and repair clauses "permits any exception for ordinary wear and tear." (Doc. 118 at 16.) Because of this all-encompassing duty, Plaintiff asserts that Defendant is responsible for replacing the roof, parking lots, and HVAC units "because the Lease requires replacements where (as here) a repair does not bring the Leased Premises back to good order, condition, and appearance." (*Id*. at 23.) Plaintiff is correct that sections 12.1 and 12.1.1 do not expressly recognize an exception for ordinary wear and tear; but neither do those provisions require Defendant to maintain the Premises in like-new condition. Rather, section 12.1 requires the tenant to maintain the Premises in "good repair, operating order, condition and appearance." It is not clear from the record that "good" necessarily means great, perfect, or like new; it might mean something less than that, and it might leave room for ordinary wear and tear. Similarly, section 12.1.1 provides further description of the tenant's maintenance and repair obligations, requiring the tenant to make repairs etc., "if any, as and when needed" to maintain the items addressed therein in "good working order and condition." As was the case for section 12.1, Plaintiff seems to believe "good working order and condition" means flawless; the court is not so sure. In any event, the court need not decide this issue, because the Lease contains another provision that directly addresses Defendant's obligations with respect to condition of the Premises when the Lease expires.

Section 29 of the Lease specifically describes the tenant's obligations with respect to the condition of the Premise when the Lease expires or terminates:

> Upon the reversion to Landlord of the Leased Premises, Tenant shall peaceably leave and surrender the Leased Premises to Landlord in the same condition in which the Leased Premises were originally received from Landlord at the commencement of this Lease, except as repaired, rebuilt, restored, altered or added to as provided in, permitted by or required by any provision of this Lease (ordinary wear and tear and the consequences of casualty, condemnation or

> taking excepted).  Tenant shall remove from the Leased Premises on or prior to such expiration or earlier termination all property situated thereon which is not owned by Landlord, and, at its expense, shall, on or prior to such expiration or earlier termination, repair any damage caused by such removal.  Property not so removed shall become the property of Landlord.

(Doc. 116 at 3-4.)  The plain language of section 29 requires Defendant to return the Premises to Plaintiff in the same condition the first tenant received it in 1994, subject to two exceptions.  The first exception applies to the extent the Premises have been "repaired, rebuilt, restored, altered or added to" as provided for elsewhere in the Lease.  The import of this exception is straightforward – to the extent the Premises have undergone any of the enumerated changes required or permitted during the term of the Lease, the tenant is required to surrender the Premises with any such changes also maintained to the same standards as the original property condition.  Moreover, we know from section 12.1 that the Premises was originally delivered in "good order and condition"; thus, the Premises must be surrendered in "good order and condition."  However, that conclusion is subject to the second exception explicitly set forth in section 29 – that "ordinary wear and tear and the consequences of casualty, condemnation or taking [is] excepted."  Accordingly, when the Lease expired at the end of January 2020, Defendant was obliged to return the Premises, including all changes and improvements, to Plaintiff in good order and condition except for, as relevant here, ordinary wear and tear.

Plaintiff vehemently argues to the contrary, claiming instead that the surrender clause is irrelevant because Defendant breached its maintenance and repair obligations during the term of the Lease.  (Doc.118 at 18.)  As noted earlier, the court has significant doubts as to whether the maintenance and repair clauses would require Defendant to maintain the premises to the high standards advanced by Plaintiff during the term of the Lease.  However, that issue is of no moment here because Plaintiff chose to allow the Lease to expire pursuant to its own terms before bringing

11

suit. Once the Lease expired, the conditions of the Premises at surrender are clearly governed by section 29 of the Lease.

Having now construed the Lease in accordance with Kansas contract law, the court determines that summary judgment is inappropriate as disputed issues of material fact still remain. Plaintiff argues that Defendant breached the Lease by failing to maintain the parking lots, roof, HVAC units, and interior in good repair, operating order, condition, and appearance. (Doc. 118 at 19-21.) In response, Defendant contends that Plaintiff is improperly seeking upgrades "in the form of a new roof, HVAC units and parking lots."[2] (Doc. 141 at 26.) And, regardless, Defendant asserts that summary judgment is inappropriate because the "jury, not the Court, must determine what is 'ordinary wear and tear' or what constitutes 'good' condition." (*Id*. at 30.)

The court agrees with Defendant that material facts concerning the condition of the Premises are hotly contested by both parties. Plaintiff provided multiple reports from various witnesses that contained assessments of the Premises' condition. (Doc. 118 at 6-10.) These assessments note that the concrete parking lots are in poor condition, the roof has several leaks, and the rooftop HVAC units are damaged. (*Id*.) However, Defendant has also provided multiple reports from its own experts inspecting the Premises' condition. (Doc. 141 at 4.) "A district court may not decide disputed issues of material fact on summary judgment, even if the claims sound in equity rather than law." *Stechschulte v. Jennings*, 297 Kan. 2, Syl. ¶ 1, 298 P.3d 1083 (2013). On one end of the spectrum, Plaintiff is essentially arguing for a complete renovation of the Premises valued at over $2,000,000. On the other, Defendant asserts that it owes nothing to Plaintiff because the property was indeed returned in good working order and condition. Based upon the conflicting evidence, summary judgment is inappropriate on the issue of liability.

---

[2] Later in its response, Defendant asserts that it recently replaced the carpet at issue. (Doc. 141 at 31-32.)

### C. Plaintiff's Motion for Partial Summary Judgment on Defendant's Defenses

Lastly, Plaintiff argues that summary judgment as to Defendant's affirmative defenses is appropriate because they lack evidentiary support. (Doc. 118 at 21.) Defendant asserts six defenses: (1) Defendant did not breach the Lease; (2) Plaintiff's claims are barred because it did not provide Defendant with sufficient notice of any alleged default and an opportunity to cure; (3) Plaintiff cannot establish the Premises' condition at the time the Lease commenced; (4) Plaintiff waived the right to claim default concerning the condition of the Premises and/or should be estopped from making such a claim because it failed to give sufficient notice and opportunity to cure; (5) Plaintiff has over-exaggerated the amount of its alleged damages; and (6) Plaintiff's claims are barred because it suffered no damages. (Doc. 116 at 14-15.)

Defenses (1), (3), (5), and (6) are not affirmative defenses as to which Defendant bears the burden of proof. They are simply theories of defense identified in the Pretrial Order to frame the issues for trial. Basically, these particular theories of defense identify evidentiary shortfalls or other flaws in the case on matters as to which Plaintiff bears the burden of proof. Given the rulings the court has made thus far in this order, all these defenses turn on factual issues to be decided at trial and are not appropriate for summary judgment.

The remaining defenses, (2) and (4), turn on Defendant's belief that notice and an opportunity to cure were prerequisites to suit. Having ruled that the Lease's notice-and-cure provisions do not apply to suits for damages, the court further concludes that Plaintiff is entitled to summary judgment on these two defenses.

### IV. Conclusion

Accordingly, Plaintiff's partial summary judgment motion (Doc. 117) is GRANTED IN PART and DENIED IN PART; it is GRANTED as to Defendant's waiver and estoppel defenses,

and DENIED in all other respects.  All other motions addressed herein (Docs. 120; 130; 142) are DENIED.

IT IS SO ORDERED this 16th day of March, 2022.

                                                                           _____s/ John W. Broomes_____
                                                                           JOHN W. BROOMES
                                                                           UNITED STATES DISTRICT JUDGE