IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENEXA 95 PARTNERS, LLC,

        Plaintiff,

v.                                                              Case No. 20-2367-JWB

KIN, INC. f/k/a KOHL'S INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to exclude testimony of Jack Werner and Cord Werner. (Doc. 119.) The motion is fully briefed and ripe for review. (Docs. 119, 125, 133.) For the reasons stated herein, Defendant's motion is GRANTED.

**I.    Background**

The facts of this case have been set forth in this court's memorandum and order on the parties' cross-summary judgment motions. (Doc. 148.) Accordingly, the court incorporates by reference its previous rendition of the facts. For purposes of this order, it is sufficient to note that this is a suit for breach of contract involving a commercial real estate lease where Plaintiff and Defendant are successors in interest to the original landlord and tenant, respectively. Plaintiff sued Defendant for failing to maintain and surrender the leased premises in a condition that met the standards for repairs and maintenance described in the disputed lease. As used herein, the term "Premises" means the leased premises as further defined and described in the court's order on summary judgment. (*See id.*)

**II.     Standard**

Federal Rule of Evidence 702, which controls the admission of expert witness testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the district court must satisfy itself that the testimony at issue is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1282 (10th Cir. 2018) (citing *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc)). The district court must first determine whether the witness is qualified by knowledge, skill, training, experience, or education to render an opinion. *Id.* If so, the district court must determine whether the witness's opinion is reliable by assessing the underlying reasoning and methodology. *Id.* at 1283. The court is not required to admit opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert," and may exclude the opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Id.* (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2020 WL 1164869, at *3 (D. Kan. Mar. 10, 2020) (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The district court may satisfy its gatekeeping role without a formal *Daubert* hearing "so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* (quoting *Daubert*, 509 U.S. at 597). "[D]istrict courts are authorized by Fed. R. Civ. P. 78 to provide by local rule for disposition of most motions without oral argument . . ." *Riddle v. Mondragon*, 83 F.3d 1197, 1208 (10th Cir. 1996). The District of Kansas has such a local rule. *See* D. Kan. Local R. 7.2.

In this instance, neither party has requested a *Daubert* hearing. Moreover, the nature of the opinions expressed, the relative completeness of the expert's reports, and the materials cited in support of and against the challenged opinions lead the court to conclude that the motion can be decided without a *Daubert* hearing. *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 664 (10th Cir. 2013) (district court permissibly exercised its discretion in ruling without a formal *Daubert* hearing).

### III. Analysis

Defendant moves to exclude expert opinions of Jack Werner and Cord Werner (collectively the "Werners"). The Werners are certified commercial property inspectors[1] who prepared a

---

[1] Neither party makes any argument concerning the Werners' qualifications to render an opinion. Accordingly, the court does not discuss and elaborate on the Werners' qualifications.

property condition report (the "Werner Report") for Plaintiff. (Doc. 125 at 1.) Plaintiff retained the Werners to opine regarding the condition of the Premises, the cause of the Premises' alleged deficiencies, and the cost to repair or replace those alleged deficiencies. (*Id.*) Defendant argues that the Werner Report should be excluded because the "cost estimates are (i) intentionally high, (ii) not quotes or bids, [and] (iii) not even to be relied upon by Plaintiff because the Werners encouraged the Plaintiff to secure professional bids and quotes." (Doc. 119 at 1.) Defendant further undercuts the Werners' reliability by asserting that "the Werners did not disclose the underlying basis for their cost opinions (e.g. square footage of involved areas, and cost per square foot or other cost estimating metric)." (*Id.*) Ultimately, since the Werners disposed of their notes concerning the underlying data, the court agrees with Defendant that "it is impossible to determine if the Werners' cost estimate opinions are based on sufficient facts or data, nor can one determine the reliability of the Werners' methodology." (*Id.*)

Generally, the Werner Report gives a broad overview of the condition of the Premises and items that, in the Werners' opinion, should be repaired or replaced. The Werner Report then provides wide-ranging cost estimates for the items they believe should be repaired or replaced. However, the Werner Report does not give individualized cost estimates for each item; rather, the items are rolled into several lump-sum, non-itemized, "sections." (*See generally* Doc. 125-1.) These sections include structure, exterior, roof, appliances, plumbing, electrical, heat & air, and interior. (Doc. 125-1 at 22.) Defendant illustrates the issue with these lump sum estimates by explaining:

> For example, the Werner report provides a cost estimate of $975,000 to $1,200,000 to repair or replace various concrete, asphalt and exterior walls. Per the Werner report, the items that roll into this cost estimate include (i) a concrete sidewalk on the west side of the building, (ii) portions of the concrete drive and parking area to the east of the building, (iii) concrete drive and loading dock area at the back of the building (i.e.—south of the building), (iv) the asphalt

> parking lot to the north of the building; and (v) brick walls along the perimeter of the property.
>
> Despite identifying at least five discrete items, the Werner report provides only a single lump sum, non-itemized, estimate for total repair and replacement cost for all of them.  This single lump-sum cost estimate from the Werners covers five separate and discrete property issues, each of which involves a different size and scope of work to repair or replace, different materials (e.g.—asphalt vs. concrete), different pricing, etc.  And further, the Werner report does not disclose the underlying data on which the cost estimate is based, such as the square footage of concrete or asphalt needed, the cost per square foot, etc., despite being required to do so per Fed. R. Civ. P. 26(a)(2) (expert's report must contain a complete statement of all opinions the expert will express, the basis and reasons for them, and the facts or data considered by the witness in forming them).

(Doc. 133 at 4-5.)  With no underlying data provided, the court agrees with Defendant's assessment.

At a minimum, the Werners should describe the method they used in reaching, and the data supporting, their determination.  *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1276, 1282 (N.D. Okla. 2000).  This is because the court cannot rely on the Werners' mere assurances that the methodology and data are reliable.  *Id*.  However, mere assurances are all that is provided to the court because the Werners destroyed the notes used in formulating the pricing estimates.  (Doc. 119-2 at 4.)  Plaintiff attempts to remedy this issue by providing affidavits from the Werners "purporting to identify, for the very first time, the square footage and cost per square foot for the concrete and asphalt work in question."  (Doc. 133 at 5.)  But this information should have been provided long ago.

Moreover, the Werner Report specifically notes that the "estimates are intentionally high[.]"  (Doc. 119-1 at 23.)  This was later confirmed by Jack Werner at his deposition.  (Doc. 119-2 at 3.)  Plaintiff attempts to deflect by asserting Defendant's counsel should have asked the Werners what they meant by the phrase "intentionally high."  (Doc. 125 at 7.)  However, this is no

5

argument at all. There is nothing ambiguous about the phrase "intentionally high." Rather, it appears the cost estimates provided by the Werners are unreliable and would only serve to confuse jurors. It would be improper for the jury to receive evidence of cost estimates that are intentionally high. Accordingly, the court grants Defendant's motion and excludes the Werner Report and any testimony by the Werners concerning cost estimates to repair or replace any aspect of the Premises.

## IV. Conclusion

Defendant's motion to exclude testimony of the Werners (Doc. 119) is GRANTED, as stated in this order, as to opinions concerning cost estimates to repair or replace any aspect of the Premises.

IT IS SO ORDERED this 17th day of March, 2022.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE