IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENEXA 95 PARTNERS, LLC,

      Plaintiff,

v.                                                       Case No. 20-2367-JWB

KIN, INC. f/k/a KOHL'S INC.,

      Defendant.

**MEMORANDUM AND ORDER**

Plaintiff moves for a new trial. (Doc. 209.) Defendant opposes Plaintiff's motion. (Doc. 213.) The motion is fully briefed (Docs. 209, 210, 213, 221) and ready for decision. For the reasons set forth herein, Plaintiff's motion for new trial is DENIED.

    **I.**    **Background and Procedural History**

Plaintiff filed this lawsuit alleging breach of contract related to a commercial lease in Johnson County, Kansas in June 2020. (Docs. 1, 1-2.) Defendant removed the case to this court in July 2020. (Doc. 1.) The case involved extensive discovery and both parties ultimately moved for summary judgment. (Docs. 117, 120.) Plaintiff's motion for summary judgment was granted in part and denied in part, and Defendant's motion for summary judgment was denied. (Doc. 148.)

This case was tried to a jury in April 2022. The jury returned a verdict in favor of Plaintiff on April 29, 2022. (Doc. 193.) Judgment was entered in favor of Plaintiff in the amount of $305,222.00 on May 2, 2022. (Doc. 196.) Both parties have subsequently filed several motions, including the motion for new trial at issue here. (Doc. 209.)

**II.     Standard**

After a jury trial, a motion for new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Such a motion is 'generally not regarded with favor, and is granted only with great caution.'" *Smith v. Cochran*, 182 F. App'x 854, 864 (10th Cir. 2006) (quoting *United States v. Perea*, 458 F.2d 535, 536 (10th Cir. 1972)). "The party seeking to set aside a jury verdict must show either trial error which constitutes prejudicial error or that the verdict was not based on substantial evidence." *Id.* (citing *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983)); *see also Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) ("A new trial cannot be granted unless the error was prejudicial and affects the party's substantial rights.").

**III.    Analysis**

Plaintiff argues that it is entitled to a new trial for five reasons: (1) the jury's verdict was grossly inadequate and the result of a jury compromise; (2) Plaintiff was not allowed to submit claims under lease §§12.1 and 12.1.1 to the jury; (3) Defendant asked the jury to consider their personal leases in deciding the case; (4) Defendant called Plaintiff and David Christie "greedy"; and (5) Defendant mentioned Plaintiff's profits on the sale of the building to suggest a windfall. (Doc. 210 at 1.) Naturally, Defendant disagrees. (Doc. 213.) These arguments will be addressed in turn.

**A.  Jury Compromise**

Plaintiff argues that the jury's verdict was the result of improper jury compromise. (Doc. 210 at 3.) In arguing improper jury compromise, Plaintiff argues that the jury's verdict was grossly inadequate because it is against the weight of the evidence. (*Id.* at 3–6.) In its brief, Plaintiff goes through the award of damages for several property conditions and analyzes both the award of

damages and the evidence to support each award.  (*Id.*)  Plaintiff also argues that the evidence, including the jury's question and the timing of the verdict, suggests that the jury reached a compromise verdict to resolve a disagreement.  (*Id.* at 7.)

Defendant argues that there is no evidence that the jury abused its discretion or was influenced in some way.  (Doc. 213 at 2.)  Defendant also notes that the jury heard evidence from many witnesses, posed a question to the court, and deliberated for several hours before returning a verdict that "was rational, thoughtful, and supported by the evidence."  (*Id.*)  Finally, Defendant argues that there is no evidence that the jury had difficulty reaching agreement on the issue of liability and that the remaining factors do not support a finding that a new trial is necessary.  (*Id.* at 3–8.)

Here, Plaintiff requested an award of just above $1,297,000.00 for the categories of damages submitted to the jury (Tr. at 1195)[1] and ultimately obtained an award of $305,222.00 (Doc. 193).  The jury awarded damages as follows: $12,860.00 for the North Asphalt Parking Lot; $132,760.00 for the East Concrete Parking Lot; $146,248.00 for the South Concrete Parking Lot; $8,534.00 for the West Sidewalk; $0 for the Roof; $5,000.00 for the HVAC Units; and $0 for the Carpeting.  (*Id.*)

"To determine whether a verdict is the result of jury compromise, we look to several factors.  In particular, a damages award that is grossly inadequate, a close question of liability, and an odd chronology of jury deliberations are all indicia of a compromise verdict."  *Burton v. R.J. Reynolds Tobacco Co.*, 208 F. Supp. 2d 1187, 1212 (D. Kan. 2002) (quoting *Skinner v. Total*

---

[1] Citations to the transcript are citations to the trial transcript unless otherwise indicated.

*Petroleum, Inc.*, 859 F.2d 1439, 1445–46 (10th Cir. 1988)). There does not seem to be a dispute between Plaintiff and Defendant that this case involved a close question of liability.[2]

"Damages are not inadequate merely because a jury awards less than the plaintiff has requested." *Shugart v. Cent. Rural Elec. Coop.*, 110 F.3d 1501, 1506 (10th Cir. 1997). Further, "[w]here the damages have not been stipulated, the jury is entitled to believe that a claim does not merit an award." *Id.* (citing *Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1513 (11th Cir. 1983)). A jury's award of damages will be upheld unless they are so grossly inadequate as to raise the inference that bias, prejudice, or passion influenced the jury or if the damages shock the court's conscience. *Moore v. Subaru of Am.*, 891 F.2d 1445, 1451–52 (10th Cir. 1989) (citing *Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985)).

One case illustrates what is meant by "grossly inadequate damages." *Skinner*, 859 F.2d at 1446. In that case, the jury awarded approximately ten percent of the plaintiff's claimed damages, and there was no evidence in the record to support this specific amount. *Id.* This, along with the pattern and timing of the deliberations, suggested that the jury reached a compromise. *Id.*

The jury awarded approximately 24% of the damages requested by Plaintiff.[3] While the amount of damages awarded by the jury is significantly less than the amount of damages requested by Plaintiff, that does not necessarily mean the damages were grossly inadequate.

In Plaintiff's own words, "[t]hree of the four jury damages figures can be tied to evidence presented at trial." (Doc. 210 at 4.) And this is true – the damage awards for the North Asphalt

---

[2] Plaintiff argues in its brief that liability was hotly contested. (Doc. 210 at 4.) Defendant does not directly address the issue, instead noting that "there is no evidence that the jury struggled to determine the issue of liability." (Doc. 213 at 3.) Because this case proceeded all the way to a jury trial, it is appropriate to say that liability was a close question.
[3] This is not to suggest that a certain threshold percentage means that damages are or are not grossly inadequate. This is merely meant to serve as a comparison to the *Skinner* case.

Parking Lot, South Concrete Parking Lot, and West Sidewalk can all be connected to evidence which was presented at trial. (*Id.* at 4–5.)

The jury awarded $12,680.00 for the North Asphalt Parking Lot. (Doc. 193.) As Plaintiff points out, Jeff Hoge testified at trial that it would cost $12,680.00 to tear out and replace the curb and gutter. (Doc. 210 at 4; Exh. 481.)[4] Hoge also testified that it would cost $146,248.00 to tear out and replace the concrete in the South Lot, which is the amount the jury awarded for the South Concrete Parking Lot. (Doc. 210 at 4; Exh. 481.) And Hoge testified that it would cost $8,534.00 to tear out and replace the West Sidewalk, the amount the jury awarded for the West Sidewalk. (Doc. 210 at 4–5; Exh. 481.)

Because each of these awards is directly connected to evidence offered, and because Plaintiff concedes that these awards are connected to the evidence, the court finds that the damage awards as to these three conditions were supported by substantial evidence and do not support a finding that the damages were grossly inadequate.

The only remaining category of damages which is less directly tied to the evidence is the award for the East Concrete Parking Lot. The jury awarded $132,760.00. (Doc. 193.) Plaintiff's expert testified that it would cost $257,760.00 to tear out and replace the parking lot. (Tr. at 180:20–22; Exh. 481.) Plaintiff contends that the only evidence presented was that the entire parking lot needed to be removed and replaced. (Doc. 210 at 5.) But the jury was free to draw its own conclusions about what good condition, subject to ordinary wear and tear, was and whether Defendant was responsible for damages to replace the entire parking lot. The jury saw pictures of the parking lot and could have concluded that only a portion of the lot needed to be replaced or repaired. Ultimately, the jury made a decision which indicates that it believed that Defendant

---

[4] Exh. is used to refer to trial exhibits.

should not be solely responsible for paying the entire cost of replacing the parking lot. These lower damages do not equal "grossly inadequate damages."

Plaintiff also contends that the jury's failure to award damages for the roof was grossly inadequate. (*Id.* at 6.) There was evidence presented at trial that the roof needed some repairs and was in poor condition. (*Id.*) But there was also evidence presented at trial that there was no reason to replace the roof and that it was in good condition subject to ordinary wear and tear. (Doc. 213 at 6–7; Tr. at 1041.) The jury was free to decide that issue on the evidence presented. And the jury had evidence to rely on in finding that Plaintiff was not entitled to damages for the roof.

Plaintiff argues that the jury's question during deliberations and shortly before reaching a verdict is evidence that the jury reached a compromise verdict. (Doc. 210 at 7.) During deliberations, the jury asked: "Are we able to portion out dollar amounts on specific items instead of the full amount of each item as asked for by the plaintiff?" (Doc. 189.) The court answered that the jury could award the damages that Plaintiff had proven and that the jury could award less than Plaintiff requested provided there was evidence to allow the jury to determine the proper amount of damages. (*Id.*) As Defendant notes, Plaintiff did not object to the court's answer to the jury's question during trial. (Doc. 213 at 7–8.) And Plaintiff does not now argue that the court's answer to the jury's question was incorrect or improper. The jury's question merely indicates that the jury was exercising careful thought and deliberation as to what damages were appropriate rather than merely accepting in full the damages requested by Plaintiff. *Cf. Cortez v. Falley*, Case No. 92-2415-GTV, 1994 WL 409576, at * (D. Kan. Aug. 2, 1994) (jury asked whether medical bills had been paid, who would receive cash award, and if conditions could be attached to the award, indicating jury did not consider damages objectively).

There is no reason to believe that the timing of the question, which the court answered just before the jury reached its final verdict, was improper, as the jury could have reached its decision about liability and waited to determine damages until the end of its deliberations. In fact, the proximity in time from when the jury asked this question to when the jury reached its verdict counsels *against* a finding of a compromise verdict. The court concludes that the timing of events suggests that the jury may have determined the amount of damages it thought appropriate on one or more claims and then sought confirmation from the court that it was authorized to award something less than the full amount sought by Plaintiff.

Last, the fact that the jury reached its verdict on a Friday afternoon after a full week of trial does not necessarily indicate that the jury reached a compromise. First, it is important to note that the jury reached a verdict at approximately 1:40 p.m. (Tr. at 1228.) This is not a case where the jury reached a verdict at the end of the day on a Friday in order to be done with jury service. *See Cassady v. Goering*, 2007 WL 549839, at *4 (D. Colo. Feb. 16, 2007) *aff'd*, 567 F.3d 628 (10th Cir. 2009). In the *Cassady* case, the judge had informed the jury that it must cease deliberating by 4:45 p.m. because of security in the courthouse. *Id.* Curiously, the verdict was announced at 4:45 p.m., which indicated the jury reached a verdict to "avoid the necessity of returning to service the following week." *Id.*

Here, the jury began deliberating around 10:00 a.m. (Tr. at 1226), asked a clarifying question about damages around 1:20 p.m. (*id.* at 1227), and then returned its verdict shortly thereafter, around 1:40 p.m. (*Id.* at 1228–29.) The mere fact that the jury reached a verdict early on a Friday afternoon does not transform the verdict to a compromise verdict.

After weighing the factors, the court finds that the jury's verdict was not based on a compromise, and thus, this argument provides no basis to order a new trial.

7

### B. Claims under Lease §§ 12.1 and 12.1.1

Plaintiff argues that it is "the master of the complaint" and should have been able to submit its §§ 12.1 and 12.1.1 claims to the jury. (Doc. 210 at 8.) This court ruled on summary judgment that Plaintiff could not present these arguments to the jury because Plaintiff allowed the lease to lapse before bringing suit, which foreclosed these arguments and required Plaintiff to bring suit only under § 29 of the lease. (Doc. 148 at 10–12.) Plaintiff presented its argument once more in its motion for clarification of the court's order. (Doc. 160.) The court ruled again on the issue at the in limine hearing. (Doc. 169 at 4–12.)

The court has had numerous opportunities to consider Plaintiff's argument that the §§ 12.1 and 12.1.1 claims should have been submitted to the jury. At each turn, the court has carefully considered the provisions of the lease and Kansas law to answer that question, and each time, the answer was clear. Plaintiff could not enforce the §§ 12.1 and 12.1.1 provisions of the lease after the lease terminated because § 29 governed the condition of the premises at the time the lease ended. If Plaintiff wanted to pursue the claims under §§12.1 and 12.1.1, it was free to do so at any point during the pendency of the lease. But Plaintiff waited until the termination of the lease, and the § 29 claim is the claim that remained.

The proper avenue for this breach of contract claim was § 29, and the court will not order a new trial on this basis because there was no prejudicial error.

### C. Jury's Consideration of Personal Leases

Plaintiff argues that Defendant made an improper "golden rule" argument to the jury in its closing arguments when counsel for Defendant asked the jury to consider apartment leases or car leases. (Doc. 210 at 9–10.) During closing arguments, defense counsel said:

> Have you ever heard of a lease, whether it be a car lease, apartment lease, have you ever heard of one of those things where the tenant has to buy a new refrigerator,

8

>  new carpet, new this, new that, and do it at the beginning of the lease and then do
>  it again at the end of the lease?  Does that make any sense?

(Tr. at 1202:11–18.)

Plaintiff's counsel objected to the comment when it was made, and the court overruled the objection at that time. (Doc. 210 at 10.) Plaintiff contends that this argument improperly asked the jury to focus on their own personal leases which were not at issue in this case, an improper golden rule argument. (*Id.*) Defendant argues that golden rule arguments are only "properly applied in the context of counsel representing personal injury plaintiffs, who expressly ask the jury to put themselves in the shoes of the personal injury plaintiff as a tactic to inject sympathy into the case and increase the plaintiff's damage award." (Doc. 213 at 9–10.) Defendant also argues that it did not make a golden rule argument and that even if it did, Plaintiff has not met its burden to obtain a new trial. (*Id.* at 10.)

Courts consider three things to determine the prejudicial effect of improper comments: (1) whether the improper comments were stray remarks; (2) whether the court took "any specific curative action;" and (3) whether the jury's findings suggest that the comments had a prejudicial effect. *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1169 (10th Cir. 2017) (quoting *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1131 (10th Cir. 2009)).

Defense counsel's remarks about other leases took up one paragraph of his closing argument. (Tr. at 1202:11–17.) In writing, defense counsel's closing argument took about 21 pages of the transcript. (*Id.* at 1196–1217.) Accordingly, Defendant's remarks about other leases were a very small piece of the argument. Further, these remarks came early on in Defendant's closing argument, putting more distance between the remarks and the jury's deliberations. The court finds that Defendant's comments qualify as stray remarks.

9

The court next considers whether the court took specific curative action. When Plaintiff objected to Defendant's reference to other leases, the court overruled that objection. (*Id.* at 1202:6–10.) The court similarly did not specifically instruct the jury related to this comment. But the court instructed the jury about what evidence it could consider and reminded the jury that "any statements, objections, or arguments made by the lawyers are not evidence in this case." (Jury Instr. No. 20.) The court read this instruction to the jury *after* it heard defense counsel's remarks. (Tr. at 1221–22.) This instruction guided the jury and helped eliminate any bias that may have been injected by those stray remarks.

The jury's findings do not suggest that defense counsel's remarks had a prejudicial effect; to the contrary, the jury returned a verdict for Plaintiff even after hearing the remarks. The verdict was an amount lower than Plaintiff requested and included a couple of categories for which the jury awarded no damages. But as discussed *infra*, that was not improper for the jury to do and indicated that the jury carefully considered the issues and made its determinations.

All in all, there is no reason to believe that these statements prejudiced the jury in any way.

### D. Defendant Calling Plaintiff and David Christie "Greedy"

Plaintiff argues that Defendant improperly called Plaintiff and David Christie greedy on six occasions in its opening and closing statements. (Doc. 210 at 12–13.) Defendant argues that Plaintiff has not carried in its burden in establishing that these alleged inappropriate remarks prejudiced the jury. (Doc. 213 at 11–12.) Defendant also argues that these comments were not improper because they were based upon evidence and that the court properly instructed the jury. (*Id.*) Because Plaintiff did not object to these statements at trial, the court reviews for plain error. *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 992 n.7 (10th Cir. 2021) (noting that unobjected to statements are reviewable for plain error where party argues for plain error

10

review).  Plain error requires a party to demonstrate: "(1) an error, (2) that is plain, meaning clear or obvious under current law, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Kearn*, 863 F.3d 1299, 1305 (10th Cir. 2017) (quoting *United States v. Piper*, 839 F.3d 1261, 1265–66 (10th Cir. 2016)).

Defendant mentioned greed on several occasions in its opening and closing statements. (Tr. at 44:14, 51:15, 1196:15, 1199:6, 1217:4–7.)  Plaintiff failed to contemporaneously object to any of those mentions of greed.  Plaintiff did, however, respond to the accusation of greed in its own closing statement.  (*Id.* at 1180:5–7.)  This response suggests that the comments did not substantially impair any rights and did not affect the integrity of the proceedings, because Plaintiff had an opportunity to explain the comments as Defendant's "game plan" for the litigation.  (*Id.*)

The court advised the jury, as mentioned above, that arguments by attorneys were not evidence and that the jury was to consider the evidence presented in making its decision.  The jury's findings do not indicate that it was prejudiced.  The jury found in favor of Plaintiff.  The jury awarded Plaintiff damages to which it believed Plaintiff was entitled.  This was not the full amount of damages requested, but the jury was free to credit or discredit the testimony as it felt was appropriate and to award damages as appropriate, so long as those damages were supported by the evidence.

Having sat through the trial and having heard all the evidence, the court finds that the extent and magnitude of the damages sought by Plaintiff in this case could be fairly characterized as overreaching in the context of this commercial lease dispute, and that describing that as being driven by some degree of greed fell within the bounds of zealous advocacy and fair commentary

on the evidence. The court believes there was no plain error here because the statements did not affect substantial rights and did not seriously affect the integrity or fairness of the proceedings.

### E. Plaintiff's Profits and the Windfall Argument

Plaintiff argues that Defendant improperly argued to the jury that Plaintiff received a windfall from owning the property at issue because it was able to sell the property for a profit after the end of the lease. (Doc. 210 at 13–16.) Defendant argues that it merely presented evidence of the value of the property over time and did not introduce evidence related to Plaintiff's profits. (Doc. 213 at 13–14.)

At the motion in limine stage, Plaintiff argued that evidence related to how much Plaintiff paid for the property and how much Plaintiff sold the property for was not relevant to the breach of contract claim. (Doc. 159 at 4–5.) The court excluded the windfall argument, explaining:

> And I've thought about this and the way I intend to handle that is I think the windfall argument and evidence supporting this idea that this is an unfair windfall and these people shouldn't be rewarded, that evidence and that argument is out.
>
> You know, business people make windfalls sometimes. They're out there to make a profit. Buy low and sell high, that's what you do.
>
> However, I do think when it comes to the jury's assessment of the condition of the property, to the extent that the lessor, the landlord didn't fix any of these things that they are complaining about, and yet they went out and were able to market the property with these problems, the fact that they – the things they said in marketing it about its quality and condition, the fact that people accepted the property in a new transaction and paid certain amounts I think has a measure of relevancy in helping the jury determine whether the property was in good condition or not and evaluate the claimed damages.

(Doc. 169 at 39:16–40:12.) Defendant relies in part on this explanation in arguing why it was not improper for the court to permit evidence related to the property's value at the time Plaintiff purchased and sold it. (Doc. 213 at 13–14.)

12

The court agrees with its earlier ruling and believes Defendant did not introduce evidence or argument improperly arguing that Plaintiff received a windfall. One of Plaintiff's witnesses testified that the property appreciated in value, contrasting Plaintiff's claim that the property was in such poor condition that it required two million dollars in repairs and replacements. (Tr. at 667:10–23.) Immediately after that statement, Plaintiff's witness was shown an exhibit that was an email from a representative of Plaintiff purporting to market the disputed property approximately six months before the lease terminated, and which described the property as being in excellent condition. (*Id.* at 671:11–13.) Plaintiff was free to dispute that description, which it did, and to argue that the property required extensive repairs in spite of its appreciation in value. Nevertheless, this is exactly the kind of testimony the court contemplated would assist the jury in deciding the condition of the property at the time the lease ended, and Defendant's exploring that issue in this fashion did not violate the court's in limine ruling.

Additionally, Plaintiff argues that Defendant improperly conflated two different sales contracts (one that never closed, and one that did) to imply that Plaintiff sold the property for a large profit shortly after the lease ended. (Doc. 210 at 15.) Defendant notes that Plaintiff did not object to its statement at the time it made the closing argument and that the court properly instructed the jury to consider only the evidence and not arguments by counsel. (Doc. 213 at 14.)

In closing arguments, defense counsel said: "The landlord sold the property for eight million a couple months after the lease ends." (Tr. at 1215:23–24.) At trial, the evidence showed that Plaintiff sold part of the property to QuikTrip for four million dollars about three months after the lease ended. (*Id.* at 663:18–21.) The evidence also showed that Plaintiff entered a contract with CityVest to sell the remaining property for eight million dollars. (*Id.* at 665:15–18.) The evidence also showed that Plaintiff instead sold the remaining property to Living Spaces for ten

13

million dollars. (*Id.* at 666:17–20.) Plaintiff's counsel clarified with the witness that the correct sales prices were four million dollars and ten million dollars and introduced evidence about the costs of owning the property. (*Id.* at 737:3–15.)

The court believes this statement by defense counsel did not prejudice the jury. Whether Plaintiff sold the property for eight million dollars a few months after the lease ended or ten million dollars a year after the lease ended is of no import because regardless, it shows that the property was in good enough condition to sell after the lease ended. Further, there was testimony introduced related to the correct sales prices and the jury was instructed to rely on evidence rather than attorney argument.

Defense counsel did not improperly argue Plaintiff received a windfall, and therefore, this is no basis for a new trial.

### IV. Conclusion

For the reasons stated, Plaintiff has not carried its burden to show that it is entitled to a new trial and Plaintiff's motion for a new trial (Doc. 209) is DENIED.

IT IS SO ORDERED this 12th day of January, 2023.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE